# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT T. DAVIS,** | ) | **CASE NO. 1:16CV2174** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **JUDGE DONALD NUGENT** |
| v. | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **KENNETH KIRK,** | ) | **JONATHAN D. GREENBERG** |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **and ORDER** |
| Defendant. | ) | **(Doc. Nos. 58, 61, 63-1, 64, 65, 66, 69, 70)** |

This matter was referred to the undersigned for general pretrial supervision.  (Doc. No. 12.)  Currently pending are the following motions: (1) Defendant Kenneth Kirk's Motion for Summary Judgment (Doc. No. 58); (2) Plaintiff Robert Davis's Motion to Stay Proceedings and for Reconsideration of Counsel (Doc. No. 61); (3) Plaintiff's Motion for Appointment of Counsel (Doc. No. 63-1); (4) Plaintiff's Motions for Leave to Amend Complaint (Doc. Nos. 64, 70); (5) Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 65); (6) Plaintiff's Motion for Court to Rule on Initial Disclosures and Place all Motions under Seal (Doc. No. 66); and (7) Defendant's Motion to Strike Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 69).

For the following reasons, it is recommended that Plaintiff's Motions to Stay (Doc. No. 61) and for Leave to Amend the Complaint (Doc. Nos. 64, 70) be DENIED.  It is further recommended that Davis' Motion for Judgment on the Pleadings (Doc. No. 65) be DENIED, and Defendant's Motion to Strike Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 69) be DENIED AS MOOT.  Lastly, it is recommended that Defendants' Motion for Summary

Judgment (Doc. No. 58) be GRANTED.

In addition, Plaintiff's Motions for Appointment of Counsel (Doc. 63-1) and for Court to Rule on Initial Disclosures and Place all Motions under Seal (Doc. No. 66) are DENIED.

## I.      Procedural Background

On August 29, 2016, Plaintiff Robert Davis (hereinafter "Plaintiff" or "Davis") filed a Complaint in this Court against Defendant City of Cleveland Police Officers Kenneth F. Kirk, Philmore Evans, and Chris Allen; and Norfolk Southern Railroad Police Officers James Kirk and Joseph Hergenroeder.  (Doc. No. 1.)  Davis alleged violations of his civil rights stemming from his arrest on August 27, 2014, and resulting injuries.

On December 16, 2016, this Court reviewed Davis' Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) to determine whether any portion of it was subject to *sua sponte* dismissal.  The Court concluded Davis' claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because, if successful, they would call into question the validity of his convictions for breaking and entering and assault.  (Doc. No. 6.)  The Court therefore dismissed Davis' Complaint.  (*Id.*)  Davis filed a timely appeal.  (Doc. No. 8.)  On January 30, 2018, the Sixth Circuit issued a decision vacating the dismissal of Davis' excessive force claim against Defendant Kenneth Kirk, affirming the dismissal of Davis' other claims, and remanding for further proceedings.  (Doc. No. 10.)

On February 28, 2018, this matter was referred to the undersigned for general pretrial supervision.  (Doc. No. 12.)  On March 23, 2018, Davis filed a Motion for Appointment of Counsel.  (Doc.  No. 16.)  The undersigned granted the motion and appointed attorney Edward Icove as *pro bono* counsel on June 6, 2018.  (Doc.  Nos. 23, 26.)  Defendant Kenneth Kirk

2

thereafter filed an Answer on June 14, 2018 and an Amended Answer on June 26, 2018.  (Doc. Nos. 29, 34.)

A Case Management Conference was held on June 20, 2018, at which discovery and dispositive motions deadlines were set.  (Doc. No. 33.)  Several telephonic conferences with counsel were subsequently conducted regarding the status of discovery.  (Doc. Nos. 35, 40.)

On January 3, 2019, the Court received a *pro se* filing from Davis, in which he provided "notice" of several alleged procedural irregularities, raised several complaints about his counsel, and asked the Court to "investigate" his concerns.  (Doc. No. 41.)  Davis attached several confidential, attorney client communications as Exhibits to his pleading.  (*Id*.)

On January 4, 2019, the undersigned issued an Order indicating the Court would not consider Davis' *pro se* filings because he was represented by counsel.[1]  (Doc. No. 41.)  Several days later, on January 8, 2019, the Court received two more *pro se* filings from Davis, which, again, attached confidential attorney client communications.  (Doc. No. 42.)  On January 9, 2019, the undersigned issued another Order stating the Court would not consider Davis' *pro se* filings.  (*Id*.)  In this Order, the Court advised counsel to talk to Davis and caution him from any further *pro se* filings.  (*Id*.)

The Court thereafter conducted a telephonic status conference with counsel on January 10, 2019.  (Doc. No. 43.)  During this conference, Davis' counsel, Mr. Icove, indicated he had recently spoken with Davis and advised him that he should not submit any further *pro se* filings with the Court.  Mr. Icove also stated that he sent Davis a copy of the Court's Orders dated

---

[1] The Court attached Davis' filings as an exhibit to its Order and placed them under seal. (*Id*.)

January 4, 2019 and January 9, 2019.

On March 11, 2019, Davis sent another *pro se* filing to the Court, the nature of which was unclear.  (Doc. No. 53.)  Shortly thereafter, on March 13, 2019, Mr. Icove filed a Motion to Withdraw as Counsel.  (Doc. No. 54.)  Therein, Mr. Icove stated that "I informed Plaintiff that if he filed any other documents during my representation that I would withdraw as counsel.  He clearly understood this material obligation." (*Id*.)  Mr. Icove then stated that, because Davis nonetheless filed another *pro se* document, he wished to withdraw.  Mr. Icove indicated his withdrawal would not materially prejudice Davis because "he [Davis] has copies of the four depositions with the deposition exhibits, and copies of all discovery that was obtained on his behalf." (*Id*.)  The Certificate of Service to the Motion indicates Mr. Icove sent a copy of the Motion to Davis on March 13, 2019.  (*Id*. at 2.)

The Court conducted a telephonic status conference with counsel on March 21, 2019.  (Doc. No. 55.)  During this conference, defense counsel indicated Defendant Kenneth Kirk did not oppose Mr. Icove's Motion.  (*Id*.)  Subsequently, on March 26, 2019, Davis filed a response to his counsel's Motion to Withdraw, in which he explained that he continues to suffer from memory and concentration deficits as a result of the injuries he suffered during his August 27, 2014 arrest.  (Doc. No. 56.)  Davis asserted that he "can not continue this case by [him]self" and is "lost for words as to what to do." (*Id*. at 2.)

On April 1, 2019, the undersigned issued an Order granting Mr. Icove's Motion to Withdraw as Counsel.  (Doc. No. 57.)  Davis later filed a motion for reconsideration of this Order, which was denied on May 8, 2019.  (Doc. No. 59; Non-Document Order dated May 8, 2019).

4

On April 12, 2019, Defendant Kirk filed a Motion for Summary Judgment and supporting exhibits.  (Doc. No. 58.)  The Certificate of Service to this Motion states that it was mailed to Davis via regular U.S. mail.  (*Id.* at 17.)

On May 10, 2019, Davis filed a *pro se* Motion to Stay Proceedings and Motion for Reconsideration of Counsel.  (Doc. No. 61.)  On that same date, he filed a "Motion in Opposition" to Defendant's Motion for Summary Judgment.  (Doc. No. 62.)  Defendant did not file a response.

On June 25, 2019, Davis filed the following four motions: (1) Motion for Appointment of Counsel (Doc. No. 63-1); (2) Motion for Leave to Amend Complaint (Doc. No. 64); (3) Motion for Judgment on the Pleadings (Doc. No. 65); and (4) a document captioned "Request Court Rule on Initial Disclosures & All Plaintiff's Motion Placed Under Seal. Motion for Discovery Abuse" (Doc. No. 66).  On July 5, 2019, Defendant filed briefs in opposition to Davis' Motion for Appointment of Counsel and Motion for Leave to Amend.  (Doc. Nos. 67, 68.)  On that same date, Defendant filed a Motion to Strike Davis' Motion for Judgment on the Pleadings.  (Doc. No. 69.)  Subsequently, on July 22, 2019, Davis filed another Motion for Leave to Amend the Complaint.  (Doc. No. 70.)

## II.    Facts

As noted above, Davis' sole remaining claim in this action is an excessive force claim against Cleveland Police Officer Kenneth Kirk.  Davis' claim arises from his arrest on August 27, 2014 for felonious assault and aggravated robbery.[2]  The parties have different versions of

---

[2] *See State of Ohio v. Davis*, Cuyahoga County Court of Common Pleas Case No. CR-14-588899-A.

the events that transpired on that date.

According to Defendant Kenneth Kirk,[3] the facts surrounding Davis' arrest are as follows.  On August 27, 2014, Norfolk Southern Railroad Police Officers Joseph Hergenroeder and James Kirk were helping to reload merchandise onto a train after receiving a report of an attempted theft.  (Doc. No. 58-1, Hergenroeder Depo. at Tr. 29; Doc. No. 58-11, J. Kirk Depo. at Tr. 8.)  After loading the train and securing the containers, the Officers decided to check the front of the train "to see if there was any activity in that area."  (*Id*.)  They drove in separate vehicles, with Officer James Kirk leading the way.  (*Id*.)

As they approached the front of the train, the Officers noticed that a container door was opened.  (Doc. No. 58-1, Hergenroder Depo. at Tr. 30.)  They stopped their respective vehicles and got out to investigate.  (*Id*.)  Officer James Kirk was approximately twenty yards ahead of Officer Hergenroeder.  (*Id*.)  Officer Hergenroeder testified he "could see on the back of the deck of that container that there was merchandise placed on that container so we knew somebody had at least taken stuff out of the container or they were currently in the process of doing so."  (*Id.*)

Officer Hergenroeder heard Officer James Kirk shout "stop, police!"  (*Id*.)  As Hergenroeder drew closer to the container, he saw Officer James Kirk pursuing Davis to an area where there was a bridge over Harvard Road.  (*Id*.)  Officer Hergenroeder then saw Davis and Officer James Kirk "engaged with each other."  (*Id.* at Tr. 31.)  He testified that "[James] Kirk's

---

[3] Two officers with the last name "Kirk" were involved in Davis' August 27, 2014 arrest and named as Defendants.  James Kirk is a police officer for the Norfolk Southern Railroad Company.  Plaintiff's claims against James Kirk were dismissed by the Sixth Circuit on January 30, 2018.  Kenneth Kirk is a Cleveland Police Officer.  He is the sole remaining defendant in this action.  James Kirk testified that he and Kenneth Kirk are not related.  *See* Doc. No. 58-11, J. Kirk Depo. at Tr. 5.

back was to the edge of the bridge and Mr. Davis was pushing and pushed and Mr. Davis and Mr. Kirk went over the side of the bridge." (*Id*.)  Officer Hergenroeder stated it was a fifteen foot fall, and indicated that Mr. Davis "partially landed on" Officer James Kirk.  (*Id*.)

Officer Hergenroeder quickly proceeded to the area where Davis and Officer James Kirk had fallen.  (*Id*.)  Officer Kirk was bleeding and laying unconscious on the concrete.  (*Id*. at Tr. 15, 24.)  Officer Hergenroeder testified that, at this point in time, there were no Cleveland Police Officers present on the scene.  (*Id*. at Tr. 31-32.)

Officer Hergenroeder testified Davis was standing over Officer James Kirk's body and "in the process of attempting to remove James Kirk's gun from his holster."  (*Id.* at Tr. 14-15.) He identified himself as a police officer[4] and told Davis to stop, but Davis failed to comply.  (*Id*. at Tr. 14.)  Officer Hergenroeder then pulled Davis away from Officer James Kirk and told him "he was under arrest, turn around, put your hands behind your back."  (*Id*. at Tr. 14-15.)  Davis again failed to comply.  (*Id*.)  Officer Hergenroeder grabbed Davis and tried to get his hands behind his back so he could handcuff him.  (*Id*. at Tr. 16.)  Davis "swung at" Officer Hergenroeder and the two men ended up in a struggle, "rolling around on the ground" while Officer Hergenroeder attempted to subdue Davis and handcuff him.  (*Id.*)  Eventually, Officer Hergenroeder was able to handcuff Davis.  (*Id.* at Tr. 17.)  Specifically, he stated Davis was "cuffed behind the back laying on his stomach."  (*Id*.)  Officer Hergenroeder then read Davis his Miranda rights, and waited for backup to arrive.  (*Id*. at Tr. 17, 21.)

---

[4] Officer Hergenroeder also testified that, at this time, he was wearing a vest that identified him as a Police Special Agent and that his gun and cuffs were "clearly displayed." (*Id*. at Tr.  16- 17.)

7

In the meantime, Officer James Kirk had gotten up from the pavement.[5]  (*Id*. at Tr. 18.)  Officer Hergenroeder told Officer Kirk to sit back down.  (*Id*.)  Hergenroeder then "called backup, 911 emergency for an officer down."  (*Id*.)  Within a few minutes, paramedics and units from the Cleveland Police Department arrived on the scene.  (*Id*. at Tr. 18, 35.)

Officer Kenneth Kirk testified that he and Cleveland Police Officer Christopher Allen responded to the scene.[6]  (Doc. No. 58-4, K. Kirk Depo. at Tr. 8.)  When they arrived, a fire engine had responded but EMS had not yet arrived.  (*Id*. at Tr. 9.)  Officer Kenneth Kirk recalled seeing officers from the Norfolk Southern Railroad but did not talk to them at that time.  (*Id*.)  He did not talk to Davis either.  (*Id*. at 10.)  After reviewing the police report, Officer Kirk recalled that Davis was already handcuffed when he and Officer Allen arrived at the scene.  (*Id*. at Tr. 13-14.)  Officer Kenneth Kirk testified he "never had any altercation with" Davis.  (*Id*. at Tr. 15-16.)

Davis' account of the events surrounding his arrest is quite different.  He testified he was walking in the area of the railyard when three officers appeared behind him.  (Doc. No. 58-9, Davis Depo. at 82-84.)  One of the officers (who Davis believed to be Norfolk Southern

---

[5] Officer James Kirk testified in deposition that, while he remembers helping to reload the train and driving to check the front of the train, he has no memory of the events leading to Davis' arrest.  (Doc. No. 58-11, J. Kirk Depo. at Tr. 7-8.)  In particular, James Kirk testified he does not remember chasing Davis or falling off the embankment.  (*Id*. at Tr. 9.)  He remembered waking up in the hospital, and being told he had a skull fracture and an "impact burst."  (*Id*. at Tr. 8, 10.)

[6] Officer Allen also testified in deposition.  (Doc. No. 58-5, Allen Depo.)  He could not recall much regarding Davis' arrest.  He did state that he believed either he or Officer Kenneth Kirk rode with Davis in the ambulance to the hospital, and guessed that it was probably he (Allen) who accompanied Davis to the hospital.  (*Id*. at Tr. 10-11.)  He had no independent recollection of the events in question.

8

Railroad Officer James Kirk) was bleeding on the left side of his head.  (*Id*. at Tr. 84.)  Davis

could not identify the other two officers, but stated that one of them was wearing the same gray-

colored uniform as Officer James Kirk and the other was wearing a blue uniform with dark

pants.  (*Id*. at Tr. 91, 108.)  Davis testified that he was walking away from the three officers

when "somebody snuck from [his] blind side" and hit him on the back of his head.  (*Id.* at Tr.

111-113.)  He could not identify who struck him.  (*Id*. at Tr. 118-119.)

       Davis testified that, after he was hit on the head, he was dazed and wobbly.  (*Id*. at Tr.

119-120.)  He saw a paramedic and had to "do a U turn" to avoid running into him.  (*Id.* at Tr.

120.)  In avoiding the paramedic, Davis ran into a concrete wall and scraped his face.  (*Id*. at Tr.

120-122.)  He fell against the concrete wall, scraped his elbow, and ended up on the ground.  (*Id*.

at Tr. 122-124.)  At that point, Davis testified that somebody came up from behind and jumped

on his back.  (*Id*. at Tr. 123.)  According to Davis, somebody grabbed his arm and tried to cuff

him, but the paramedic told the officer not to.  (*Id.* at Tr. 124-125.)  Davis acknowledged in

deposition that he could not recall or identify the person who jumped on his back and/or tried to

cuff him.  (*Id*. at Tr. 127.)

       It is undisputed that paramedics arrived at the scene and transported Davis to the hospital.

Paramedic Brendan McCool testified that, when he arrived at the scene, Davis was found

walking with Cleveland Police Officers in handcuffs.  (Doc. No. 58-7, McCool Depo. at Tr. 16.)

Davis had abrasions to his head, nose, and face, but minimal blood loss.  (*Id*. at Tr. 13-14.)

Davis did not complain of head, neck or back pain.  (*Id.* at Tr. 16.)  However, because McCool

had received a report that Davis had fallen 10 to 15 feet, he immobilized Davis with a backboard,

C-collar, and head blocks due to concerns of potential traumatic injury.  (*Id*. at Tr. 17-18, 25.)

Davis testified that he was taken to the intensive care unit, where he claims he was treated for blood pooling in his brain and a broken back. (Doc. No. 58-9 at Tr. 135.) He was in the hospital until August 29, 2019, after which he was taken into custody. (*Id.* at Tr. 139-140.)

III. **Motions to Appoint Counsel, Stay, Amend the Complaint, Place Motions under Seal and for Judgment on the Pleadings (Doc. Nos. 61, 63-1, 64, 65, 66, 70) and Motion to Strike (Doc. No. 69)**

Before addressing Defendant Kenneth Kirk's Motion for Summary Judgment, the Court will resolve the various other motions filed in this matter; i.e. Davis' Motions to appoint counsel, stay the instant matter, amend the Complaint, and place filings under seal, as well as his Motions for judgment on the pleadings and for sanctions. (Doc. Nos. 61. 63-1, 64, 65, 66, 70.) The Court will also address, below, Defendant's Motion to Strike. (Doc. No. 69.)

A. **Motion for Appointment of Counsel (Doc. No. 63-1)**

In his Motion for Appointment of Counsel, Davis asserts that "he has not been provided with any Motion that has been provided by Mr. Icove and Defendant's Counsels." (Doc. No. 63-1 at 1.) He further maintains Mr. Icove failed to forward to him docketed motions and other unidentified documents. (*Id.*) Davis asserts the Court improperly allowed Mr. Icove to withdraw twelve days after the dispositive motion deadline had passed and argues he is being "deprived of fair due process." (*Id.*) He requests appointment of new counsel.

Davis' motion is without merit. As an initial matter, Davis is incorrect that Mr. Icove was permitted to withdraw twelve days after the dispositive motion deadline. The record reflects the Court initially set a dispositive motion deadline of March 1, 2019. (Doc. No. 33.) On February 26, 2019, the Court granted Defendant Kirk's motion to extend that deadline to April 12, 2019. (Doc. No. 52; Non-Document Order dated February 26, 2019.) The Court

subsequently issued an Order on April 1, 2019 (eleven days *prior to* the dispositive motion

deadline) allowing Mr. Icove to withdraw as counsel.  (Doc. No. 57.)  In this Order, the Court

specifically noted that Mr. Icove had assured the Court he had provided Davis with "copies of

the four depositions with the deposition exhibits and copies of all discovery that was obtained on

his behalf."  (Doc. Nos. 54, 57.)  Thus, the Court determined Davis would not be prejudiced by

withdrawal.[7]  (Doc. No. 57 at 8-9.)

Davis has offered no basis for the Court to reconsider this decision or to appoint new

counsel.  Mr. Icove represented to this Court that he provided all discovery and deposition

transcripts to Davis prior to withdrawal, and the Court finds no reason to doubt this

representation.  Indeed, the Court notes that, in support of his Brief in Opposition to Defendant

Kirks' Motion for Summary Judgment, Davis attaches numerous exhibits, including copies of

deposition testimony, police reports, paramedic reports, and other documents that appear to have

been exchanged in discovery.   (Doc. No. 62.)

The Court also rejects Davis' contention that Defendant Kirk failed to serve his summary

judgment motion on Davis.  The Certificate of Service to Defendant's Motion expressly states

that it was sent, via regular U.S. mail, to Davis at the address he has provided this Court.   (Doc.

No. 58 at 17.)  Moreover, based on the arguments raised in Davis' Brief in Opposition, it appears

to the undersigned that Davis did, in fact, receive Defendant Kirk's Motion.

Finally, the Court finds Davis has not offered any other persuasive basis for appointment

of new counsel at this time.  Both the discovery and dispositive motion deadlines have passed.

---

[7] The Court also notes that, at Davis' request, he was granted a 30 day extension of time to
respond to Defendant's Motion for Summary Judgment.  *See* Doc. No. 60; Non-Document
Order dated May 8, 2019.

Davis has timely responded to Defendant's Motion for Summary Judgment and raised numerous arguments therein.  In sum, Davis has failed to demonstrate that appointment of counsel is warranted in this manner at this time.

Accordingly, and for all the reasons set forth above, Davis' Motion for Appointment of Counsel (Doc. No. 63-1) is DENIED.

**B.      Motion for Stay (Doc. No. 61)**

In his Motion to Stay, Davis argues that he "continues to suffer from head injuries and as a result he is unable to properly focus and concentrate in order to properly format said Summary Judgment response."  (Doc. No. 61.)  He states he is "mentally exhausted" and requests the Court "take some sort of action to remedy Plaintiff's issue."  (*Id.*)

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court."  *FTC v. E.M.A. Nationwide, Inc*., 767 F.3d 611, 626-27 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. United States Dist. Court, S. Dist., etc*., 565 F.2d 393, 396 (6th Cir. 1977)).  *See also Prudential Ins. Co. of America v. Blanton,* 118 F.Supp.3d 980, 984 (N.D. Ohio 2015); *Fowler v. Nelson*, 2017 WL 2989194 at * 1 (W.D. Tenn. April 14, 2017); *Federal Express Corp. v. Caruso*, 2015 WL 12867319 at * 1 (W.D. Tenn. May 18, 2015). "A stay of a civil case is an extraordinary remedy that should be granted only when justice so requires."  *Chao v. Fleming*, 498 F.Supp.2d 1034, 1037 (W.D. Mich. 2007).  *See also Coley v. Lucas County, Ohio*, 2011 WL 5838190 at * 2 (N.D. Ohio Nov. 18, 2011).

It is recommended that Davis' Motion to Stay be denied.  As noted above, both the

12

discovery and dispositive motions deadlines have passed.  Davis timely filed his response to

Defendant Kirk's Motion for Summary Judgment and articulated numerous factual and legal

arguments therein.  In addition, although he claims to be mentally exhausted, the Court notes

Davis has retained the ability to file numerous *pro se* motions and pleadings in this action over

the past several months, including five motions in May and June of this year alone.  (Doc. Nos.

61, 63-1, 64, 65, 66.)  Further, Davis has not demonstrated that either judicial economy or the

public interest would be served by a stay at this time.

Accordingly, and for the reasons set forth above, it is recommended that Davis' Motion

for Stay (Doc. No. 61) be DENIED.

### C.      Motions for Leave to Amend (Doc. No. 64, 70)

The entirety of Davis' Motions for Leave to Amend are as follows:

Now comes the Plaintiff, Robert T. Davis, *pro se*, to respectfully move this
Honorable Court for leave to amend his complaint by adding additional Defendants
by Joinder of Parties under and pursuant to Fed. R. Civ. Pr. 15(a) and 20(a)(2), 19(a).
Plaintiff gives reasons in support of leave being granted in the attached memorandum
in support attached herewith.

(Doc. No. 64.)  The docket reflects there are no "attached memorandums" to either of

Davis' motions.

Defendant Kirk opposes Davis' motion, arguing Davis "offers no good cause for

amending his Complaint."  (Doc. No. 68.)  Defendant further asserts that "given the late stage that

this case is in, it would be both unjust and [un]reasonable for this Court to allow Plaintiff to

amend."  (*Id.*)

Rule 15 provides a party may amend its pleadings once as a matter of course within 21

days of serving the pleading or, if a responsive pleading is required, 21 days after service of a

13

responsive pleading.  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The liberal amendment policy embodied in Rule 15(a)(2), however, "is not without limits."  *DeCrane v. Eckart*, 2018 WL 916520 at * 1 (N.D. Ohio Feb. 16, 2018).  As the Sixth Circuit has observed, "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (citing *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).

"In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).  Standing alone, delay "does not justify denial of leave to amend."  *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).  In addition, when discovery is in the early stages, any prejudice from entertaining an amended pleading is minimal.  *See DeCrane*, 2018 WL 916520 at * 2.  Addressing the contention that an amendment might necessitate another dispositive motion, the Sixth Circuit also noted that "another round of motion practice ... does not rise to the level of prejudice that would warrant denial of leave to amend."  *Morse*, 290 F.3d at 801.

It is recommended that Davis' Motions to Amend be denied.  As noted above, Davis did not file attached memorandums with either of his Motions to Amend.  Therefore, the Court does

14

not have before it any explanation of the nature or scope of Davis' proposed amendment, either in terms of the additional parties he wishes to join or the claims he seeks to assert against any such new parties.  Moreover, even aside from this issue, the Court notes that this case is nearly three years old and both discovery and dispositive motions are complete.[8]  In the absence of any argument to the contrary, the Court finds that allowing leave to amend at this time is not consistent with principles of judicial economy and would be prejudicial to Defendant.

Accordingly, it is recommended that Davis' Motions for Leave to Amend (Doc. Nos. 64, 70) be DENIED.

### D. "Request Court Rule on Initial Disclosures & All Plaintiff's Motion Placed Under Seal. Motion for Discovery Abuse" (Doc. No. 66)

Davis raises several different issues in his motion, which is captioned "Request Court Rule on Initial Disclosure & All Plaintiff's Motion Placed under Seal. Motion for Discovery abuse.  Prior to Summary Judgment Sanctions Rule #11, Failure to Include Paragraph #1-8 et al." (Doc. No. 66.)  First, Davis asserts that "initial disclosures were not conducted in this case" and argues  both Mr. Icove and defense counsel should be sanctioned under Rule 11 for violating his due process and equal protection rights.  (*Id*.)  Davis further maintains Defendant failed to disclose the names of several witnesses and, further, failed to disclose alleged audio and video recordings of his arrest.  (*Id*. at 2.)  He next argues Defendant "clearly mislead this Honorable Court, when they [sic] have unlawfully concealed Cleveland Police Officer (Sergeant) Brian Allan's Badge Number #A1003."  (*Id*.)  Davis maintains Defendant's "unlawful nondisclosure

---

[8]  The Court notes that Davis was represented by counsel throughout the discovery phase of this matter.  At no time did Davis' counsel seek leave to amend.

under Fed. Rules 26(a)(1)(A)" subjects him to sanctions and renders his summary judgment motion "unlawfully defective."  (*Id*. at 3.)

For the following reasons, Davis' Motion is denied.  Davis raises a number of alleged discovery abuses in his Motion, from the failure to file initial disclosures to Defendant's alleged withholding of evidence.  Davis failed, however, to raise any of these discovery issues prior to the close of discovery.  As noted above, the discovery deadline expired five months ago, on February 28, 2019. *See* Non-Document Order dated February 4, 2019.  Although he was represented by counsel during the discovery phase of this case, Davis did not, at any point in time, bring any of the above issues to this Court's attention.  As such, Davis has waived judicial review of these issues.  *See* Local Rule 37.1(b) ("No discovery dispute shall be brought to the attention of the Court . . . more than ten (10) days after the discovery cut-off date.")

Moreover, assuming, *arguendo*, that Davis had not waived review of the discovery issues identified in his Motion, the Court finds they would not warrant the imposition of sanctions or render Defendant's summary judgment motion "defective."  With regard to Davis' argument that Defendant failed to disclose audio and video recordings of his arrest, he points to no evidence that any such recordings exist.  As to his allegation that Defendant failed to disclose witnesses, Davis does not identify what witnesses were allegedly concealed from him or explain how they are relevant to the instant case.  Lastly, with regard to Davis' allegation that Defendant unlawfully concealed the badge number of Cleveland Police Officer Brian Allen, the Court finds this argument without merit.  The Exhibit attached to Davis' Motion that mentions Officer Brian Allan relates to a use of force investigation with regard to two individuals that have no apparent relevance to the instant action.  (Doc. No. 66 at 4.)  There is absolutely no indication from the

face of this document that Officer Brian Allan had any involvement in Davis' August 27, 2014 arrest.

Finally, Davis also suggests, summarily, that his Motion should be placed under seal. This request is denied.  Davis has offered no basis for sealing the instant Motion, and the Court can discern none from the face of the pleading.

Accordingly, and for all the reasons set forth above, Davis' Motion for Court to Rule on Initial Disclosures and Place All Motions under Seal (Doc. No. 66) is DENIED.

>    **E.    Motion for Judgment on the Pleadings (Doc. No. 65) and Motion to Strike Motion for Judgment on the Pleadings (Doc. No. 69)**

On June 25, 2019, Davis filed a pleading captioned "Prior to Summary Judgment. Plaintiff's requested Motion for Judgment on the Pleadings.  Request the Court to Review All Pleadings, Pursuant to Discovery Abuse by Both Party Counsels."  (Doc. No. 65.)  Therein, Davis requests the Court sanction defense counsel for allegedly failing to disclose various documents and information, including "CD/DVD interviews" relating to his arrest and the "detail daily duty police reports that were required to be submitted to Supervisor, Sergeant, Brian Allan #9091." (*Id.*)  Davis requests an evidentiary hearing regarding these alleged discovery abuses.  (*Id.* at 8.) Finally, Davis argues he is entitled to judgment on the pleadings in his favor pursuant to *Monell v. Department of Social Services*, 463 U.S. 658, 691 (1978).  (*Id.* at 7-8.)

In response, Defendant moved to strike Davis' Motion, arguing it is "out of order and clearly violates the Court's scheduling order."  (Doc. No. 69.)  In this regard, Defendant asserts Davis' motion is untimely as the dispositive motion deadline expired on April 12, 2019.  (*Id.*)  He further maintains that "Plaintiff's issue is with documents he is alleging that Defendant did not provide, which is a discovery issue, not a dispositive issue."  (*Id.*)

17

For the following reasons, it is recommended Davis' Motion for Judgment on the Pleadings (Doc. No. 65) be denied.  The bulk of Davis' Motion seeks sanctions on the basis that Defendant failed to disclose relevant evidence, including police reports and interviews.  To the extent Davis seeks relief on the basis of alleged discovery abuses, it is recommended that Davis' Motion be denied for the reasons set forth above, in connection with his Motion for Court to Rule on Initial Disclosures and Place All Motions under Seal (Doc. No. 66).

To the extent Davis seeks judgment in his favor on the pleadings, it is recommended that his Motion be denied.  As Defendant correctly notes, the dispositive motion deadline in this matter expired on April 12, 2019.  Davis did not file his Motion for Judgment on the Pleadings until over two months later, on June 25, 2019.  Davis offers no explanation for his failure to timely move for judgment on the pleadings and none is apparent from the face of his motion.  Moreover, Davis' Motion fails to articulate the nature of his alleged *Monell* claims against the City or explain in any meaningful why he believes he would be entitled to judgment in his favor with respect to any such claim(s).[9]

Accordingly, and for all the reasons set forth above, it is recommended that Davis' Motion for Judgment on the Pleadings (Doc. No. 65) be DENIED.  In light of this recommendation, it is further recommended that Defendant's Motion to Strike Davis' Motion (Doc. No. 69) be

---

[9] It is not entirely clear to the undersigned that any *Monell* claims against the City of Cleveland are currently before the Court.  As noted above, on December 16, 2016, this Court concluded Davis' claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and dismissed his Complaint. (Doc. No. 6.)  The Sixth Circuit thereafter issued a decision vacating the dismissal of Davis' excessive force claim against Defendant Kenneth Kirk but affirming the dismissal of all of Davis' other claims. (Doc. No. 10.)  Thus, under the Sixth Circuit's decision, the only remaining claim in this action is the excessive force claim against Defendant Kenneth Kirk.  Davis offers no basis for his apparent belief that a *Monell* claim survived the Sixth Circuit's decision.

DENIED AS MOOT.

**VI.     Motion for Summary Judgment (Doc. No. 58)**

In his Motion, Defendant Kenneth Kirk argues he is entitled to summary judgment in his favor on Davis' excessive force claim as a matter of law for several reasons.  (Doc. No. 58.) First, he asserts that "although there are factual disputes at issue, they are not genuine."  (*Id*. at 9.) Specifically, Defendant maintains Davis' account of the circumstances surrounding his arrest is "wildly different from every other witness and statement taken from the scene of the incident." (*Id.*)  He argues that, even accepting Davis' version of events, he is nonetheless entitled to judgment in favor in light of Davis's deposition testimony that he could not identify who allegedly struck him.  (*Id.*)  Second, Defendant argues Davis' excessive force claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1983) because Davis pled guilty to felonious assault of a police officer and breaking and entering.  (*Id*. at 10.)  Third, Defendant argues he is entitled to qualified immunity because "it is clear from the facts established that [he] had no physical interaction with Plaintiff Davis at all."  (*Id*. at 11.)  Finally, Defendant argues he is statutorily immune from any state law claims in the Complaint because Davis offers no evidence that Defendant was willful, wanton, or reckless.  (*Id*. at 13.)

Davis filed a lengthy brief in opposition.[10]  (Doc. No. 62.)  Therein, Davis appears to argue that all of the various officers that were deposed in this matter are misrepresenting the facts

---

[10] Davis' brief in opposition (Doc. No. 62) is 216 pages long.  Unidentified and unauthenticated exhibits appear randomly throughout the document, making it very difficult for the Court to follow Davis' argument. There is no table of contents or table of authorities, nor any coherent listing of the many Exhibits that appear throughout Davis' brief.  While it is clear that Davis' brief fails to comply with Local Rule 7.1(f) in multiple respects, in light of Davis' *pro se* status, the Court nonetheless carefully reviewed and considered all of the arguments and exhibits therein.

and circumstances surrounding his August 27, 2014 arrest.  (*Id.* at 54, 153, 159.)  While he

acknowledges that he cannot definitively identify Defendant Kenneth Kirk as the individual who

hit him, he insists that (based on his review of the various police reports relating to his arrest) it

must have been Kenneth Kirk who assaulted him.  (*Id.* at 53, 120, 153.)  To support his argument,

Davis points to alleged contradictions in the officers' deposition testimony and police reports,

including alleged discrepancies regarding the number of victims treated at the scene and the

specific timing of events.  (*Id.* at 106-110.)  Davis also argues, at length, that Defendant failed to

produce relevant documents and information, including police reports, body cam footage, and

Use of Force Procedures.  (*Id.* at 54, 172, 176, 183, 185.)  He asserts the City failed to conduct a

proper investigation of the incident, thereby violating his due process and equal protection rights.

(*Id.* at 174-176.)  Based on the above, Davis asserts there are genuine issues of material fact that

preclude summary judgment in Defendant Kirk's favor and, further, that Defendant is not entitled

to qualified immunity as a matter of law.

> Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part that:
>
> A party may move for summary judgment, identifying each claim or defense—or
> the part of each claim or defense—on which summary judgment is sought. The
> court shall grant summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter
> of law.

Fed .R. Civ. P. 56(a).  Rule 56(e) provides in relevant part that "[i]f a party fails to properly

support an assertion of fact or fails to properly address another party's assertion of fact as required

by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion ... [and]

grant summary judgment if the motion and supporting materials—including the facts considered

undisputed-show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox,* 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476,

479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50 (citation omitted).

### A.    Federal Excessive Force Claim

As noted above, after remand from the Sixth Circuit, the only remaining claim in this action is Davis' § 1983 claim against Defendant Kenneth Kirk for use of excessive force in connection with his August 27, 2014 arrest.[11]  As it is dispositive, the Court will first address Defendant Kirk's argument that he is entitled to qualified immunity because Davis has failed to offer sufficient proof that Defendant had any physical contact with Davis in connection with his arrest.

Federal courts typically follow a "two-tiered inquiry" to determine if an official is entitled to qualified immunity.  *See Fazica v. Jordan,* 926 F.3d 283, 289 (6th Cir. 2019); *Austin v. Redford Twp. Police Dept.*, 690 F.3d 490, 496 (6th Cir. 2012).  *See also Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  The first step is to determine whether, considering the allegations in a light most favorable to the party injured, a constitutional right has

---

[11] To maintain a claim under Section 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).  The first step in any such claim is to identify the specific constitutional right allegedly infringed.  *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Baker*, 443 U.S. at 140.  Here, Davis alleges Defendant Kenneth Kirk used excessive force in violation of his Fifth, Eighth, and Fourteenth Amendment rights. (Doc. No. 1 at ¶ 70.)

22

been violated.  *See Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed. 2d. 565 (2009); *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009); *Pritchard v. Hamilton Township Board of Trustees*, 2011 WL 2039066 at * 5 (6th Cir. May 25, 2011).  The second is to ask if the right at issue was "clearly established" when the event occurred such that  a reasonable official would have known that his conduct violated it.  *Pearson*, 555 U.S. at 232.  *See also Martin*, 712 F.3d at 957.  If either step is not satisfied, qualified immunity will shield the official from civil damages. *Martin*, 712 F.3d at 957. *See also Pearson*, 555 U.S. at 236.

Here, however, Defendant Kenneth Kirk maintains he is entitled to summary judgment in his favor because Davis has failed to offer sufficient proof that Defendant was personally involved in the alleged use of excessive force in connection with Davis' arrest.  The Court, therefore, will limits its analysis to the question of proof of Defendant Kenneth Kirk's individual liability for acts that Davis alleges amount to unconstitutional excessive force and will not address whether the physical contact was, in fact, excessive or whether its unconstitutionality was clearly established at the time of trial.  *See Fazica*, 926 F.3d at 289.

To survive summary judgment, Davis must point to sufficient record evidence to create a disputed issue of material fact as to whether Defendant Kirk was personally involved in the alleged conduct that violated Davis' constitutional rights.  *See Fazica*, 926 F.3d at 289; *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th Cir. 2010).  This is because "[e]ach defendant's liability must be assessed individually based on his own actions."  *Binay*, 601 F.3d at 650.  "As a general rule, mere presence at the scene of a [constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984).  *See also Fazica*, 926 F.3d at 289.

As the Sixth Circuit recently explained, however:

> Having personal involvement in or direct responsibility for the violation of Plaintiff's constitutional rights does not, however, necessarily mean that each Defendant officer directly placed hands on her.  There are several ways that a defendant officer may violate a pretrial detainee's constitutional rights. A plaintiff who claims that a defendant used excessive force must show that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Binay*, 601 F.3d at 650 (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). "[A] police officer who fails to act to prevent the use of excessive force may still be held liable where '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.' " *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quoting *Turner,* 119 F.3d at 429).

*Fazica*, 926 F.3d at 289.

In the instant case, Defendant Kenneth Kirk argues he is entitled to summary judgment in his favor because the facts establish that he "had no physical interaction with Plaintiff Davis at all."  (Doc. No. 58 at 11.)  He emphasizes Davis' deposition testimony that he cannot identify the officer that struck him in the head from behind, and argues Davis "only recognizes Defendant [Kenneth Kirk's] name from the [police] report, without taking into account that there were two officers involved with the last name 'Kirk.'" (*Id.* at 12.)

After careful review of the deposition testimony and exhibits attached to the parties' briefing, the Court finds Davis has failed to offer sufficient evidence linking Defendant Kenneth Kirk to the alleged unconstitutional conduct at issue herein.  As Defendant correctly notes, Officers Hergenroeder, Evans, and Kenneth Kirk all testified consistently in deposition that Defendant Kirk did not arrive on the scene until after Davis' confrontation with Officers Hergenroeder and James Kirk.  (Doc. No. 58-1, Hergenroeder Depo. at Tr. 18-20, 32, 35; Doc. No. 58-4, K. Kirk Depo. at Tr. 9-16; Doc. No. 58-6, Evans Depo. at Tr. 15-17.)  Indeed, each of

24

these Officers (and the related Police Reports) confirm that Davis was already subdued and handcuffed by the time Defendant Kenneth Kirk responded to the scene.  (Doc. No. 58-4, K. Kirk Depo. at Tr. 13-14; Doc. No. 58-1, Hergenroeder Depo. at Tr. 14-18, 32, 35; Doc. No. 58-6, Evans Depo. at Tr. 15-17; Doc. No. 58-2 at PageID# 453-456; Doc. No. 58-10 at PageID# 581.) Thus, both the Officers' deposition testimony and the documentary evidence consistently indicate that Defendant Kenneth Kirk was not personally involved in any physical altercation with Davis nor was he present when Officers Hergenroeder and James Kirk pursued and arrested him.  Faced with similar circumstances, the Sixth Circuit has affirmed the granting of summary judgment in an officer's favor on the grounds of qualified immunity.  *See e.g., Burley v. Gagacki*, 729 F.3d 610, 617 (6th Cir. 2013) (affirming grant of summary judgment to state and local police officers "because no evidence placed the state and local defendants inside Plaintiffs' home at the appropriate time to witness or respond to any unconstitutional conduct that may have occurred.")

Davis nonetheless argues that his deposition testimony creates a genuine issue of material fact regarding Defendant Kenneth Kirk's personal involvement in the alleged unconstitutional conduct at issue.  It is recommended the Court reject this argument.  Davis himself repeatedly acknowledged in deposition that he could not definitively identify Defendant Kenneth Kirk as one of the three men that allegedly pursued him in the railyard.  (Doc. No. 58-9, Davis Depo. at Tr. 116-118, 129-130, 142-143.)  Rather, Davis testified as follows:

> Q:     Okay.  Just so I'm clear, you're not claiming one of those three individuals
>        was Kenneth Kirk on the railroad tracks, correct?
>
> A:     I'm — I'm claiming due to – I'm claiming that the person that was there was
>        in a blue uniform, the guy that punched me, which is – I'm going to say it
>        was Kenneth Kirk.
>
> Q:     But you don't know that do you, as you sit here today?

A:      No.

Q:      You don't know what Kenneth Kirk looks like?

      * * *

A:      No.

      * * *

Q:      And is the only reason you believe Kenneth Kirk was in any way involved in the incident involving your arrest on August 27th because you read his name in some of the police records?

A:      Well, they wrote it.

Q:      Okay.  But you have no independent recollection as to what, if anything, Kenneth Kirk did in effectuating your arrest, is that true?

      * * *

A:      Other than what I relied on.

Q:      Meaning, the documents, the police reports?

A:      Yes, this is true.

(*Id*. at Tr. 142-143.)  Thus, Davis acknowledged that the only basis for his assertion that Defendant Kenneth Kirk was present during the alleged unconstitutional conduct at issue is the fact that Kirk's name was mentioned in various police reports.  As noted above, however, the police reports authored by Officers Hergenroeder, Evans, and Allen all consistently show that Defendant Kenneth Kirk was not present when Davis struggled with Officers Hergenroeder and James Kirk and was placed in handcuffs.  (Doc. No. 58-6, Evans Depo. at Tr. 15-17; Doc. No. 58-2 at PageID# 453-456; Doc. No. 58-10 at PageID# 581.)

The record also reflects that Davis was unable to identify Defendant Kenneth Kirk as the individual that struck him in the head and/or jumped on his back.  (Doc. No. 58-9, Davis Depo. at

Tr. 118, 127, 130, 140-142.)  Specifically, Davis testified as follows:

Q:     Sir, can you testify under oath as to who you claim struck you in the back of the head?

A:     Well, I'm going to be honest with you, I can't exactly testify as to the back of my head. I mean I can't testify as to who - - - I'm talking about my understanding and what I'm seeing when I see him.  Three people.  The closest person in my mind is where I don't see him no more because of this being back here. (Indicating).  And, you know, the movement of the person as I'm going is the person that hit me. So, no, I wouldn't be able to say who.

Q:     So you don't know– assuming what you say is true, that you were struck in the back of the head, you don't know if it was the second person, the third person, or someone else who potentially struck you, correct?

A:     I don't know who it was.

                        * * *

Q:     It's my understanding from your testimony you don't know who you claim jumped on your back and was trying to put cuffs on you?

A:     I can't recall him or identify who he was, anything at that point.

                        * * *

Q:     Can you describe the person who you claimed jumped on your back and tried to put cuffs on you?

A:     I can't distinctly describe the person but —

Q:     Okay. So you don't know if he was one of the three people that you described for me in great detail that were up on the railroad tracks, correct?

A:     No, I can't.

Q:     And you don't know if it was, in fact, one of those three people, correct?

A:     No.

Q:     And you don't know if it was somebody else?

A:     I'm out of it from the injury so I can't say yes or no.

(*Id*. at Tr. 118, 127, 129-130.)  In sum, Davis was unable to clearly articulate why he believed Defendant Kenneth Kirk assaulted him, other than the fact that his name was mentioned in several police reports:

> Q:   Why do you believe [it was] Kenneth Kirk [that used excessive force during your arrest?]
>
> A:   You keep saying the name.  Somebody hit me. That's all I'm saying. I'm trying to equate that. You keep saying the name so then you're confusing me to say –
>
> Q:   No, I'm asking you with respect to the person named as Kenneth Kirk – for starters, do you know who that person is, Kenneth Kirk?
>
> A:   He's a Cleveland police officer.
>
> Q:   You believe that from reading the police reports.
>
> A:   If it's true.
>
> Q:   Sir, I'm asking you a question.
>
> A:   Well–
>
> Q:   Do you have any independent knowledge of who Kenneth Kirk is besides what you may have read in a police report?
>
>       * * *
>
> A:   No.

(*Id*. at Tr. 140-141.)

For the following reasons, it is recommended the Court find Davis' testimony is not sufficient to create a genuine issue of material fact as to Defendant Kenneth Kirk's personal involvement in the alleged unconstitutional conduct at issue.  Davis has not offered sufficient evidence that Defendant Kenneth Kirk was present at the railyard when Davis alleges he was subjected to an excessive use of force.  Indeed, even accepting Davis' version of events as true,

28

Davis' own deposition testimony (set forth above) reveals that his only basis for believing Defendant Kirk was present at the scene was the fact that his (Kirk's) name was mentioned in various police reports.  As noted above, however, the police reports authored by Officers Hergenroeder, Evans, and Allen all consistently state that Defendant Kenneth Kirk was not present when Davis struggled with Officers Hergenroeder and James Kirk.  (Doc. No. 58-6, Evans Depo. at Tr. 15-17; Doc. No. 58-2 at PageID# 453-456; Doc. No. 58-10 at PageID# 581). Moreover, Davis expressly (and repeatedly) acknowledged in deposition that he could not definitively identify Defendant Kirk as the individual who either hit him in the head or jumped on his back.  Thus, it is recommended the Court find Davis has failed to offer sufficient evidence to create a genuine issue of material fact that Defendant Kenneth Kirk either (1) personally engaged in unconstitutional conduct; or (2) witnessed unconstitutional conduct and failed to prevent it.

Accordingly, and for all the reasons set forth above, it is recommended that Defendant Kenneth Kirk's Motion for Summary Judgment (Doc. No. 58) with respect to Davis' federal excessive force claim be GRANTED.[12]

## B.      State Law Claims

Defendant Kirk also moves for summary judgment in his favor with respect to any state law claims asserted in Davis' Complaint.  (Doc. No. 58 at 13-14.)  The Court, however, is not convinced that any state law claims that may be set forth in the Complaint survived after remand from the Sixth Circuit.  As noted *supra*, pursuant to the Sixth Circuit's January 29, 2018 decision,

---

[12] The Court notes that, in his brief in opposition, Davis attempts to raise several other federal claims, including various due process, equal protection, and *Monell* claims.  As noted *supra*, after remand from the Sixth Circuit, the only remaining claim in this action is Davis' excessive force claim against Defendant Kenneth Kirk. Thus, the Court will not consider any of the various other federal claims argued in Davis' brief.

29

the only claim remaining in this action is Davis' excessive force claim under § 1983.  Thus, the

Court finds Defendant Kirk's request for summary judgment with respect to Davis' state law

claims is moot, as no such claims are currently before the Court.[13]

## V.      Conclusion

Accordingly, and for all the reasons set forth above, it is recommended that Davis'

Motions to Stay (Doc. No. 61) and for Leave to Amend the Complaint (Doc. No. 64, 70) be

DENIED.  It is further recommended that Davis' Motion for Judgment on the Pleadings (Doc.

No. 65) be DENIED, and Defendant's Motion to Strike Plaintiff's Motion for Judgment on the

Pleadings (Doc. No. 69) be DENIED AS MOOT.  Lastly, it is recommended that Defendant's

Motion for Summary Judgment (Doc. No. 58) be GRANTED.

In addition, Davis' Motions for Appointment of Counsel (Doc. 63-1) and for Court to

Rule on Initial Disclosures and Place all Motions under Seal (Doc. No. 66) are DENIED.


Date:    July 25, 2019                                   _s/ Jonathan D. Greenberg_____
                                                          Jonathan D. Greenberg
                                                          United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of
Court within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the
specified time may waive the right to appeal the District Court's order.  *See United States v.
Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474
U.S. 1111 (1986).**

---

[13] To the extent any potential state law claims may have survived after remand, it is
recommended the Court decline to exercise supplemental jurisdiction over such claims
pursuant to 28 U.S.C. § 1367(c)(3).